United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ELISABETH SARDIN DUTRISAC,<br><br>                    Plaintiff,<br><br>        v.<br><br>STMICROELECTRONICS, INC., et al.,<br><br>                    Defendants. | Case No.  23-cv-06639-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS WITH LEAVE TO AMEND**<br><br>[Re:  ECF No. 23, 53] |

Before the Court are Defendants STMicroelectronics, Inc.'s ("ST Inc.") and STMicroelectronics N.V.'s ("STNV") motions to dismiss Plaintiff Elisabeth Sardin Dutrisac's Complaint.  ECF No. 23 ("ST Inc. Mot."); ECF No. 53 ("STNV Mot.").  Defendants Gilles Bouvier and STNV join in ST Inc.'s motion.  ECF No. 29 (Bouvier's joinder); STNV Mot. at 9 ("STNV joins ST Inc.'s motion to dismiss the Complaint.").  Plaintiff opposes the motions.  ECF No. 30 ("Opp. to ST Inc."); ECF No. 56 ("Opp. to STNV").  ST Inc. and STNV filed replies.  ECF No. 32 ("ST Inc. Reply"); ECF No. 62 ("STNV Reply").  The Court finds the motions suitable for disposition without oral argument.  Civ. L.R. 7-1(b).  The Court previously vacated the hearing on ST Inc.'s motion to dismiss, ECF No. 52, and the Court now VACATES the hearing on STNV's motion to dismiss currently set for October 31, 2024.

For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART the motions to dismiss.

## I.    BACKGROUND

The following facts are taken from Plaintiff's complaint, ECF No. 1-1 ("Compl."), which the Court accepts as true for the purposes of this motion.

Plaintiff is an adult female.  Compl. ¶¶ 6, 19.  In or around January 2000, Defendants ST

United States District Court
Northern District of California

Inc. and STNV[1] hired Plaintiff as a design engineer.  Compl. ¶¶ 1, 18.  Shortly after she was hired, Plaintiff's manager, Bernard Ramanadin, returned to France and she began reporting to Defendant Gilles Bouvier.  *Id.* ¶¶ 1, 21.  Plaintiff and Bouvier initially worked well together, and she received positive feedback from Bouvier and Ramanadin.  *Id.* ¶ 22.  However, Bouvier began to repeatedly make sexual comments and jokes to Plaintiff and asked her to go on dates, which she politely declined.  *Id.* ¶¶ 1, 23.  One evening, as Plaintiff was leaving work after working late, Bouvier trapped Plaintiff against her car, forcefully grabbed her waist, touched her buttocks, forced a kiss on her, and pressed his groin against hers.  *Id.* ¶¶ 1, 24.  Plaintiff pushed Bouvier away, entered her car, locked the doors, and quickly drove away.  *Id.* ¶¶ 1, 24.

In the weeks following the sexual assault, Bouvier began to retaliate against Plaintiff. Compl. ¶ 2.  For example, Bouvier treated Plaintiff as invisible and passed over her in team meetings where everyone would be asked to speak except for her.  *Id.* ¶ 25.  Bouvier also began to deprive Plaintiff of access to files she had previously worked on, and Plaintiff was not given work. *Id.*  When Plaintiff complained to Bouvier, Bouvier told her for the first time that her coding skills were poor and added that she should have agreed to go on a date with him.  *Id.* ¶¶ 2, 25.  A few weeks later, as Plaintiff was leaving work after working late, Bouvier again sexually assaulted Plaintiff as she was walking to her car in the parking lot.  *Id.* ¶¶ 3, 26.  Similar to the first sexual assault, Bouvier forcibly kissed Plaintiff on the lips while grabbing her waist.  *Id.* ¶ 26.

Shortly after the second sexual assault, Plaintiff met with Ted Daniels, the head of human resources, and reported Bouvier's sexual harassment, sexual assaults, and retaliation.  Compl. ¶¶ 4, 27.  Daniels joked that Plaintiff should expect such behavior because she and Bouvier are both French, insisted that Plaintiff should be happy to work at STM, and implied that Plaintiff should not make waves if she intended to have a successful career at STM.  *Id.* ¶¶ 4, 27.  After Plaintiff complained to human resources, Bouvier took away essentially all of her assignments.  *Id.* ¶¶ 5, 28.  Plaintiff then reported Bouvier's sexual harassment and retaliation to Ramanadin.  *Id.* Ramanadin and a human resources agent from out of state traveled to California to speak with

---

[1] The Complaint does not distinguish between ST Inc. and STNV and instead treats them collectively as "STM."  *See* Compl. ¶ 8.

Plaintiff. *Id.* ¶ 28.  Plaintiff was returned some of her work assignments, but Bouvier remained her supervisor and continued to work in close proximity to her.  *Id.*  Bouvier remained cold and impolite to Plaintiff throughout the remainder of her employment.  *Id.*  In or around 2003, STM terminated Plaintiff's employment.  *Id.* ¶ 29.  Plaintiff alleges that her termination was pretextual and was in retaliation for her complaints and resistance to Bouvier's advances and in discrimination on the basis of her sex and gender.  *Id.*

On December 21, 2023, Plaintiff filed this action in California state court.  Compl. Plaintiff's Complaint brings eleven causes of action: (1) discrimination based on sex/gender in violation of the California Fair Employment and Housing Act ("FEHA"), Compl. ¶¶ 36–42; (2) hostile work environment harassment based on sex/gender in violation of FEHA, *id.* ¶¶ 43–53; (3) retaliation for engaging in protected activity in violation of FEHA, *id.* ¶¶ 54–60; (4) failure to prevent discrimination, harassment, and retaliation in violation of FEHA, *id.* ¶¶ 61–68; (5) retaliation in violation of California Labor Code § 1102.5, *id.* ¶¶ 69–78; (6) violation of California Labor Code § 98.6, *id.* ¶¶ 79–89; (7) retaliation in violation of California Labor Code § 6310, *id.* ¶¶ 90–96; (8) wrongful termination in violation of public policy, *id.* ¶¶ 97–105; (9) sexual battery in violation of California Civil Code § 1708.5, *id.* ¶¶ 106–14; (10) negligent supervision and retention, *id.* ¶¶ 115–22; and (11) intentional infliction of emotional distress, *id.* ¶¶ 123–31.  Claims 2, 5, 6, 9, and 11 are brought against all Defendants, while all remaining claims are brought against only the "Entity Defendants," which includes ST Inc., STNV, and Does 1–20.

On December 28, 2023, ST Inc. removed the action to this Court.  ECF No. 1.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(2)

Under Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss a pleading for "lack of personal jurisdiction."  "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."  *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)).  California's long-arm statute is coextensive with federal due process requirements.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d

United States District Court
Northern District of California

797, 800–801 (9th Cir. 2004).  "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Walden*, 571 U.S. at 283 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

When a defendant raises a challenge to personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper.  *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citing *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011)).  "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (quotation marks and citation omitted).  "[T]he plaintiff cannot simply rest on the bare allegations of its complaint," but the uncontroverted allegations in the complaint must be accepted as true.  *Schwarzenegger*, 374 F.3d at 800 (quotation marks and citation omitted).  The court may consider evidence presented in affidavits in considering a 12(b)(2) motion.  *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).  Where not directly controverted, plaintiff's version of the facts is taken as true.  *Id.*  Conflicts between the facts contained in the parties' affidavits must be resolved in plaintiffs' favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.  *Id.*

Personal jurisdiction may be either general or specific.  General personal jurisdiction exists when the defendant's contacts "are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 127 (quotation marks and citation omitted).  Specific personal jurisdiction exists when the defendant's contacts with the forum state are more limited but the plaintiff's claims arise out of or relate to those contacts.  *Id.* at 127–28.

**B.    Rule 12(b)(5)**

A federal court lacks personal jurisdiction over a defendant if service of process is insufficient.  *See Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).  A motion to dismiss may be brought under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process. Fed. R. Civ. P. 12(b)(5).  "Once service is challenged, plaintiffs bear the burden of

4

establishing that service was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). "If the plaintiff is unable to satisfy this burden, the Court has the discretion to either dismiss the action or retain the action and quash the service of process." *Stevens v. Security Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976). "The court may consider evidence outside the pleadings in resolving a Rule 12(b)(5) motion." *Fairbank v. Underwood*, 986 F.Supp.2d 1222, 1228 (D. Or. 2013). "Dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained. In such instances, the district court should, at most, quash service, leaving the plaintiffs free to effect proper service." *Moletech Global Hong Kong Ltd. v. Pojery Trading Co.*, No. C 09-00027 SBA, 2009 WL 506873, at *3 (N.D. Cal. Feb. 27, 2009) (quoting *Umbenhauer v. Woog*, 969 F.2d 25, 30–31 (3rd Cir. 1992)).

### C.    Rule 12(b)(6)

"A Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). A district

court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

## III.   REQUESTS FOR JUDICIAL NOTICE

A court generally cannot consider materials outside the pleadings on a motion to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). A court may, however, consider items of which it can take judicial notice without converting the motion to dismiss into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. A court may additionally take judicial notice of "'matters of public record' without converting a Motion to Dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)). Under the incorporation by reference doctrine, courts may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)) (alteration in original).

### A.   Plaintiff's Request in Support of Her Opposition to ST Inc.'s Motion

In her opposition to ST Inc.'s motion to dismiss, Plaintiff requests that the Court take judicial notice of *Norris v. STMicroelectronics, Inc.*, No. 01-00001-PHX-EHC, 2007 WL 9723943 (D. Ariz. July 31, 2007), as "an example of additional factual basis for Plaintiff's allegation that STM engaged in a cover up or attempted a cover up of a previous instance or allegations of sexual assault by an alleged perpetrator of such abuse." Opp. to ST Inc. at 6; *see also id.* at 8–9.

1    Defendants oppose the request for judicial notice, arguing that *Norris* does not involve sexual

2    assault and, to the extent that the Court takes judicial notice of *Norris*, it cannot take judicial

3    notice of the facts within it because the facts are reasonably disputed.  ST Inc. Reply at 18–21.

4          The Court agrees with Defendants.  *Norris* is of limited relevance to this motion because

5    Plaintiff must show that an entity or entities "engaged in a cover up or attempted cover up of a

6    previous instance or allegations of *sexual assault*."  Cal. Civ. Proc. Code § 340.16(e)(2)(C)

7    (emphasis added).  *Norris* involved allegations of *sexual harassment*, and while the Court

8    acknowledges the seriousness of such allegations, they do not meet the definition of sexual assault

9    under § 340.16.  *See* Cal. Civ. Proc. Code § 340.16(b)(1) (defining "sexual assault" as "any of the

10    crimes described in Section 243.4, 261, 264.1, 286, 287, or 289, or former Sections 262 and 288a,

11    of the Penal Code, assault with the intent to commit any of those crimes, or an attempt to commit

12    any of those crimes"); *see also Norris*, 2007 WL 9723943, at *3 (discussing the plaintiff's

13    allegations of sexual harassment).  Moreover, even if the Court were to take judicial notice of

14    *Norris*, Plaintiff requests that the Court take judicial notice of that opinion for an inappropriate

15    reason.  Plaintiff requests that the Court consider the allegations in *Norris* as "additional factual

16    basis" for Plaintiff's allegations.  Opp. at 6.  However, the Court cannot do so.  It is well settled

17    that, even though a court may take judicial notice of the existence of another court's opinion or

18    filings in related proceedings, the court cannot accept as true facts found or alleged in such

19    documents.  *See Lee*, 250 F.3d at 690 ("[W]hen a court takes judicial notice of another court's

20    opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the

21    opinion, which is not subject to reasonable dispute over its authenticity.'" (quoting *S. Cross*

22    *Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426–27 (3rd

23    Cir.1999))); *accord GemCap Lending, LLC v. Quarles & Brady, LLP*, 269 F.Supp.3d 1007, 1019

24    (C.D. Cal. 2017), *aff'd sub nom. GemCap Lending I, LLC v. Quarles & Brady, LLP*, 787 F. App'x

25    369 (9th Cir. 2019); *Kuhn v. Three Bell Cap.*, No. 23-CV-02958-PCP, 2023 WL 6780524, at *2

26    (N.D. Cal. Oct. 12, 2023).

27          Accordingly, Plaintiff's request for judicial notice in support of her opposition to ST Inc.'s

28    motion to dismiss is DENIED.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### B.      Plaintiff's Request in Support of Her Opposition to STNV's Motion

Plaintiff requests that the Court take judicial notice of five pages from "st.com," STNV's Form 20-F from 2002 and Form 6-K from 2023, and the docket in this case.  *See* ECF No. 59. STNV does not oppose Plaintiff's request for judicial notice but argues that the Court cannot take judicial notice of the facts within the documents.  STNV Reply at 2.

The Court takes judicial notice of the five pages from "st.com" because those pages are posted on a public website whose accuracy cannot reasonably be questioned.  However, judicial notice is limited to the existence of these webpages because the Court cannot conclude that the facts within these documents are accurate.  *See Smith v. Google, LLC*, No. 23-CV-03527-PCP, 2024 WL 2808270, at *3 (N.D. Cal. June 3, 2024) (taking judicial notice of webpages but not the facts within them).  The Court takes judicial notice of STNV's Form 20-F and Form 6-K because these documents are SEC filings, which are matters of public record not subject to reasonable dispute.  *See In re Calpine Corp. Sec. Litig.*, 288 F.Supp.2d 1054, 1076 (N.D. Cal. 2003) ("[T]he Court may properly take judicial notice of SEC filings . . . .").  Finally, the Court takes judicial notice of its own docket because it is a matter of public record not subject to reasonable dispute. *EduMoz, LLC v. Republic of Mozambique*, 968 F.Supp.2d 1041, 1049 (C.D. Cal. 2013) ("The court can take judicial notice of its own docket.").  As with the webpages, the Court takes judicial notice of the fact of the SEC filings and the docket but not for reasonably disputed assertions of fact within them.

Accordingly, Plaintiff's requests for judicial notice in support of her opposition to STNV's motion to dismiss is GRANTED.

## IV.      DISCUSSION

### A.      Personal Jurisdiction Over STNV

STNV moves to dismiss because the Court has neither general nor specific personal jurisdiction over it.  STNV Mot. at 3–6.  Plaintiff argues that the Court has personal jurisdiction under an alter ego-based theory.  Opp. to STNV at 12.

#### i.      General Jurisdiction

Plaintiff raises no argument for why the Court might have general personal jurisdiction,

and the Court finds that it cannot exercise general jurisdiction over STNV based on any allegations specific to STNV.  A court "may exercise general jurisdiction only when a defendant is 'essentially at home' in the State." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 352 (2021) (quoting *Goodyear Dunlop Tires Operations, S. A v. Brown*, 564 U.S 915, 919 (2011)).  "For a corporate defendant, general jurisdiction is paradigmatically appropriate in the state in which the entity is incorporated or where it maintains its principal place of business." *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir. 2023).  STNV is not subject to general jurisdiction in California because it is incorporated under Netherlands law and maintains its corporate "legal seat" in Amsterdam, The Netherlands.  ECF No. 53-1 ("Tuinfort Decl.") ¶ 4.

### ii.  Specific Jurisdiction

Plaintiff also raises no argument for why the Court might have specific personal jurisdiction based on STNV's, as opposed to another entity's contacts, and the Court finds that it cannot exercise specific jurisdiction based on any allegations specific to STNV.  "Specific jurisdiction covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford*, 592 U.S. at 352.  The Ninth Circuit has established a three-prong test for whether a court can exercise specific personal jurisdiction over a non-resident defendant: (1) the defendant "must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger*, 374 F.3d at 802.  The plaintiff bears the burden on the first two prongs.  *Id.*  "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.*  "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (internal quotation marks and citation omitted).  Plaintiff alleges no facts that would show that STNV has had any contact with

1    California or that her claims arise out of or relate to such contacts.  Nor could she—STNV has

2    presented uncontroverted evidence that it does not have any property or conduct any business in

3    the United States and that it never employed Plaintiff or any of the individuals she named in her

4    Complaint.  *See* Tuinfort Decl. ¶¶ 5–12, 21.

5            **iii.    Alter Ego-Based Jurisdiction**

6            Plaintiff argues that the Court may attribute ST Inc.'s contacts, which no party disputes are

7    adequate to establish specific personal jurisdiction, to STNV for jurisdictional purposes.  Opp. to

8    STNV at 12–17.  "The existence of a parent-subsidiary relationship is insufficient, on its own, to

9    justify imputing one entity's contacts with a forum state to another for the purpose of establishing

10   personal jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015).  However, under

11   certain limited circumstances, the Court may "pierce the corporate veil" separating affiliated

12   entities and attribute jurisdictional contacts accordingly.  *See id.*  Under the Ninth Circuit's "alter

13   ego" test, courts treat two entities as alter egos or a single enterprise for purposes of personal

14   jurisdiction where a plaintiff makes a prima facie case that (1) there is such unity of interest and

15   ownership that the separate personalities of the two entities no longer exist and (2) that failure to

16   disregard their separate identities would result in fraud or injustice.  *Id.* at 1073.  Conclusory

17   allegations of "alter ego" status are insufficient to state a claim.  *Sandoval v. Ali*, 34 F.Supp.3d

18   1031, 1040 (N.D. Cal. Mar. 28, 2014) (quoting *Neilson v. Union Bank of Cal., N.A.*, 290

19   F.Supp.2d 1101, 1116 (C.D. Cal. 2003)).  Rather, a plaintiff must allege specifically both elements

20   of alter ego liability, as well as facts supporting each.  *Id.*  Disregarding the corporate entity is

21   recognized as an "extreme remedy," and courts will only pierce the corporate veil in "exceptional

22   circumstances." *Gonzalez v. Drew Indus. Inc.*, No. CV 06–08233 DDP (JWJx), 2008 WL

23   11338569, at *1 (C.D. Cal. Apr. 1, 2008) (quoting *Calvert v. Huckins*, 875 F.Supp. 674, 678 (E.D.

24   Cal. 1995)).

25           a.   Unity of Interest

26           The "unity of interest and ownership" prong requires "a showing that the parent controls

27   the subsidiary to such a degree as to render the latter the mere instrumentality of the former."

28   *Ranza*, 793 F.3d at 1073 (citations omitted).  This test envisions "pervasive control over the

United States District Court
Northern District of California

subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Id.* (citations and quotations omitted).  "Total ownership and shared management personnel are alone insufficient to establish the requisite level of control." *Id.* (citations omitted).  Further, one company being "involved directly in decision-making" of another where each entity "observe[s] all of the corporate formalities necessary to maintain corporate separateness" is insufficient to show that they should be treated as a single enterprise for personal jurisdiction.  *Unocal*, 248 F.3d at 928.  Courts consider nine factors when assessing the first prong of the alter ego test:

> (1) inadequate capitalization, (2) commingling of funds and other assets, (3) disregard of corporate formalities and failure to maintain an arm's length relationship, (4) holding out by one entity that is liable to the debts of the other, (5) identical equitable ownership, (6) use of the same offices and employees, (7) lack of segregation of corporate records, (8) manipulating assets between entities so as to concentrate the assets in one and the liabilities in another, and (9) identical directors and officers.

*City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F.Supp.3d 610, 635 (N.D. Cal. 2020) (citing *Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1250 (9th Cir. 2017)).

STNV emphasizes that STNV and ST Inc. are legally distinct entities.  In particular, STNV has presented evidence that ST Inc. is a wholly owned subsidiary of STMicroelectronics (North America) Holding Inc., which is a wholly owned subsidiary of STNV.  Tuinfort Decl. ¶ 18.  "As a parent company, STNV provides certain limited services to its subsidiaries, such as those described in its 2023 Annual Report, but does not exercise close control over its subsidiaries' daily affairs which they manage on their own." *Id.* ¶ 15.  STNV and ST Inc. observe corporate formalities; have their own directors, officers, and employees; maintain separate corporate and financial records; do not comingle assets; and maintain independent bank accounts.  *Id.* ¶¶ 16–17.

Plaintiff argues that her Complaint, which states that "there existed a unity of ownership and interest between or among two or more of the Defendants" and "Defendants were the successors-in-interest and/or alter egos of the other Defendants," is sufficient to establish jurisdiction at the pleadings stage.  Opp. to STNV at 13–14 (quoting Compl. ¶ 10).  Plaintiff also presents evidence that she argues show that STNV and ST Inc. operate as a single enterprise

including: (1) the use of the name "STMicroelectronics" on policy documents and Plaintiff's tax and payroll documents, *id.* at 14; (2) the fact that Plaintiff was compensated with STNV stock, *id.* at 14–15; (3) the "st.com" website, which refers to "STMicroelectronics" rather than "ST Inc." and refers to its subsidiaries and employees as "One Team," *id.* at 15–16; and (4) STNV's SEC filings, which states that STNV conducts operations through subsidiaries, *id.* at 16.

The Court finds that Plaintiff's allegations and evidence fall far short of the exacting standard required to pierce the corporate veil. As an initial matter, Plaintiff's allegations that "there existed a unity of ownership and interest between or among two or more of the Defendants" and that "Defendants were the successors-in-interest and/or alter egos of the other Defendants" are inadequate to support personal jurisdiction because these allegations are conclusory and without factual support. *See Sandoval*, 34 F.Supp.3d at 1040 (noting that conclusory allegations of alter ego status are inadequate); *Pratt v. Higgins*, No. 22-CV-04228-HSG, 2024 WL 628362, at *4 (N.D. Cal. Feb. 14, 2024) (holding that a plaintiff that relied on conclusory allegations failed to establish a unity of interest for an alter ego-based claim of jurisdiction).

To the extent that Plaintiff presents evidence in support of jurisdiction, her evidence is inadequate to meet her burden to establish that alter ego-based jurisdiction is proper. First, the use of the name "STMicroelectronics" on policy documents and Plaintiff's tax documentation is inadequate to establish a unity of interest and ownership between STNV and ST Inc. Plaintiff asks the Court to draw the unwarranted inference that any reference to "ST" and "STMicroelectronics" is a reference to STNV. But Plaintiff provides no factual basis for the Court to draw this inference, and such an inference is undermined by Plaintiff's evidence. For example, Plaintiff's tax documents list the address for ST Inc., rather than STNV. *Compare* ECF No. 57-2 ("Hale Decl. Ex. 2") (listing an address in Carrollton, Texas), *with* ECF No. 59-6 at 5 ("RJN Ex. 6") (attributing the same Carrollton, Texas address to ST Inc.). Even if the Court assumed that "ST" and "STMicroelectronics" referred to STNV, the use of STNV's name on policy documents and tax forms does not establish a unity of interest and ownership. *See Salkin v. United Servs. Auto. Ass'n*, 767 F. Supp. 2d 1062, 1066 (C.D. Cal. 2011) ("The presence of USAA's logo on documents and correspondence from USAA Life does not demonstrate sufficiently that the two

1   companies are one entity."); *Ranza*, 793 F.3d at 1074 (holding that evidence showing that a parent

2   company "establishes general human resource policies for both entities" is insufficient to show

3   that the parent dictates every facet of the subsidiary's business to establish an alter ego

4   relationship). Second, although the fact that Plaintiff was compensated in part by STNV stock is

5   relevant to the alter ego analysis, it is not adequate on its own to establish the level of control

6   necessary to pierce the corporate veil. *See Ranza*, 793 F.3d at 1074 ("A parent corporation may be

7   directly involved in financing and macro-management of its subsidiaries . . . without exposing

8   itself to a charge that each subsidiary is merely its alter ego." (quoting *Unocal*, 248 F.3d at 927)).

9   Third, Plaintiff argues that webpages on "st.com" demonstrate that STNV conducts business in

10  California and has employees in California. Opp. to STNV at 15. But this argument also relies on

11  the unsupported inference that any reference to "ST" and "STMicroelectronics" is a reference to

12  STNV. Moreover, this Court and others have found similar evidence of separate corporate entities

13  representing themselves as a single entity online is weak evidence of unity of interest and

14  inadequate to establish jurisdiction. *See, e.g.*, *Jeong v. Nexo Fin. LLC*, No. 21-CV-02392-BLF,

15  2022 WL 174236, at *14 (N.D. Cal. Jan. 19, 2022) (finding that the plaintiff's reliance on

16  shorthand references to "Nexo" as if multiple separate Nexo entities were a single entity was

17  inadequate to establish jurisdiction); *Corcoran v. CVS Health Corp.*, 169 F.Supp.3d 970, 984

18  (N.D. Cal. 2016) ("[C]ourts recognize that separate corporate entities presenting themselves as one

19  online does not rise to the level of unity of interest required to show companies are alter egos.").

20  Finally, although Plaintiff argues that STNV's SEC filings conflate STNV and ST Inc., these

21  filings merely state that STNV is a parent company and conducts its operations through

22  subsidiaries. *See, e.g.*, ECF No. 59-7 ("RJN Ex. 7") at 6. Nothing about these statements suggests

23  that STNV and its subsidiaries were ignoring corporate formalities necessary to maintain corporate

24  separateness. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017) ("[T]he

25  parent-subsidiary relationship does not on its own establish two entities as 'alter egos.'"). Even

26  when considered collectively, Plaintiff's evidence does not show that STNV "dictates every facet

27  of [ST Inc.'s] business—from broad policy decisions to routine matters of day-to-day operation."

28  *See Unocal*, 248 F.4d at 926. At best, Plaintiff's evidence shows minimal indicia of control that

1  are not sufficient to justify the extreme remedy of piercing the corporate veil.

2            b.  Inequitable Result

3        Where a plaintiff fails to satisfy the "unity of interest" prong, a court need not analyze the

4  "fraud or injustice prong." *Ranza*, 793 F.3d at 1075 n.9 (citing *Unocal*, 248 F.3d at 928).  Since

5  the Court finds that Plaintiff has failed to allege sufficient facts to satisfy the "unity of interest"

6  prong here, the Court declines to consider the second prong of the test for alter ego-based

7  jurisdiction.

8                                    *     *     *

9        Accordingly, the Court GRANTS STNV's motion to dismiss Plaintiff's claims lack of

10  personal jurisdiction.  Plaintiff's arguments in support of alter ego-based jurisdiction indicate to

11  the Court that Plaintiff may be grasping at straws, and the Court finds it highly unlikely that

12  Plaintiff will cure this deficiency in personal jurisdiction with amendment.  However, the Court

13  will allow Plaintiff one opportunity to amend to identify further facts in support of the Court's

14  personal jurisdiction over STNV.  *See Bacon v. Woodward*, 104 F.4th 744, 753 (9th Cir. 2024)

15  ("[A] district court should grant leave to amend . . . unless it determines that the pleading could

16  not be cured by the allegation of other facts." (quoting *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th

17  Cir. 2000))).

18      **B.**   **Service of Process**

19        STNV argues that the Court should dismiss Plaintiff's claims against STNV or quash

20  service of process because Plaintiff's method and timing of service were inadequate.  *See* STNV

21  Mot. at 6–9.

22          **i.**   **Method of Service**

23        Under the relevant provisions of Federal Rule of Civil Procedure 4, Plaintiff could have

24  served STNV in one of three ways: (1) "by any internationally agreed means of service that is

25  reasonably calculated to give notice, such as those authorized by the Hague Convention," Fed. R.

26  Civ. P. 4(f)(1); (2) "by delivering a copy of the summons and of the complaint to an officer, a

27  managing or general agent, or any other agent authorized by appointment or by law to receive

28  service of process," Fed. R. Civ. P. 4(h)(1)(B); or (3) in a manner consistent with state law "where

United States District Court
Northern District of California

United States District Court
Northern District of California

1   the district court is located or where service is made," Fed. R. Civ. P. 4(e)(1), (h)(1)(A).

2        STNV argues, and Plaintiff does not contest, that she failed to effectuate service consistent

3   with Rule 4(f)(1) and (h)(1)(B).  STNV Mot. at 7.  Plaintiff filed a proof of service that states that

4   she served an agent authorized to accept service for "CT Corporation System" in Glendale,

5   California.  *See* ECF No. 38.  This method of service does not meet the requirements of Rule

6   4(f)(1) because this does not satisfy the service requirements of the Hague Convention.  The

7   Hague Convention, to which the United States and the Netherlands are signatories, provides for

8   three principal forms of service: "(a) through the receiving country's central authority; (2) through

9   various alternative methods like consular channels, service on judicial officers, or service through

10   'postal channels,' so long as the receiving country has not objected to such methods; and

11   (3) through methods to which the receiving country has affirmatively agreed or authorized."

12   *Cadence Design Sys., Inc. v. Fenda USA Inc.*, No. 23-CV-05916-RFL, 2024 WL 2284678, at *2

13   (N.D. Cal. May 21, 2024) (internal citations omitted) (citing Hague Convention on the Service

14   Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965,

15   20 U.S.T. 361, Arts. 1–11, 19).  Plaintiff effectuated service through none of the forms provided

16   for under the Hague Convention.  Similarly, Plaintiff's method of service does not meet the

17   requirements of Rule 4(h)(1)(B) because CT Corporation and ST Inc. are not authorized to accept

18   service of process on behalf of STNV and STNV does not have an authorized agent for service of

19   process in California.  *See* Tuinfort Decl. ¶ 20.

20        Plaintiff instead argues that she has satisfied Rule 4(h)(1)(A) because she has effectuated

21   service consistent with California law.  Under California law, "[a] summons may be served on a

22   corporation by delivering a copy of the summons and the complaint . . . [t]o . . . a general

23   manager, or a person authorized by the corporation to receive service of process."  *See* Cal. Civ.

24   Proc. Code § 416.10(b).  The California Supreme Court has held that a person is a "general

25   manager" under the statute when the individual is "of sufficient character and rank to make it

26   reasonably certain that the defendant will be appraised of the service made."  *Cosper v. Smith &*

27   *Wesson Arms Co.*, 53 Cal.2d 77, 83 (1959) (quoting *Eclipse Fuel Eng'g Co. v. Superior Ct. In &*

28   *For City & Cnty. of San Francisco*, 148 Cal.App.2d 736, 746 (1957)).  The California Supreme

1   Court emphasized that whether a person is a general manager for a corporation turns on the

2   particular facts of the case and held that a sales representative for an out-of-state corporation

3   served as a general manager because the representative had ample regular contact with the

4   corporation and gave the corporation the business advantages it would have enjoyed had it

5   conducted its business through its own offices or paid agents in the state.  *Id.* at 83–84.  The Ninth

6   Circuit has distilled *Cosper* and its progeny and summarized its rule as follows:

> [S]ervice through a subsidiary as general manager requires a
> sufficiently close connection with the parent.  This depends upon the
> frequency and quality of contact between the parent and the
> subsidiary, the benefits in California that the parent derives from the
> subsidiary, and the overall likelihood that service upon the subsidiary
> will provide actual notice to the parent.

11   *U.S. ex rel. Miller v. Pub. Warehousing Co. KSC*, 636 F. App'x 947, 949 (9th Cir. 2016).

12          The Court finds that Plaintiff has failed to meet her burden to establish that service was

13   proper because she has failed to establish that ST Inc. is a "general manager" of STNV.  Plaintiff

14   argues that this case is controlled by *Yamaha Motor Company v. Superior Court*.  Opp. to STNV

15   at 18–19.  However, in *Yamaha*, the California Court of Appeal found that the facts before it were

16   sufficient to conclude that Yamaha-America served as a general manager for Yamaha-Japan in

17   California.  *Yamaha Motor Co. v. Superior Ct.*, 174 Cal.App.4th 264, 274 (2009).  In particular,

18   the Court of Appeal noted that "Yamaha-America *does* have an exclusive arrangement to sell the

19   manufacturer's products, provides warranty service, English owner manuals, does testing,

20   marketing, and *receives complaints* about the manufacturer's products."  *Id.*  Unlike *Yamaha*,

21   Plaintiff has failed to allege any facts or identify any evidence that would similarly support a

22   finding that ST Inc. is a general manager for STNV.  Plaintiff points to evidence of STNV's public

23   filings and the "st.inc" website, but none of these sources describes the frequency and quality of

24   contact between STNV and ST Inc. or the benefits in California that STNV might receive from ST

25   Inc.  *See* Opp. to STNV at 20.  To the extent that Plaintiff relies on STNV's 2002 SEC filings,

26   which represent that ST Inc. is STNV's agent for service of process in the United States, *see* RJN

27   Ex. 6 at 5, Plaintiff presents no basis for the Court to infer that such a statement is still accurate

28   over 20 years later.  Indeed, similar language is not present in STNV's 2023 SEC filings, and

16

STNV's Senior Legal Counsel's declaration, which was signed in 2024, represents that ST Inc. is not authorized as an agent for service of process in California. *See* RJN Ex. 7 at 6; Tuinfort Decl. ¶ 20. Plaintiff also argues that the fact that ST Inc. is a wholly owned subsidiary of STNV is sufficient to make ST Inc. a general manager, but a parent-subsidiary relationship alone is insufficient to make a subsidiary a general manager. *See Imemco, Inc. v. Lumenis, Inc.*, No. SA CV 14-1877-DOC (DFMx), 2016 WL 11744970, at *4 (C.D. Cal. Feb. 19, 2016) (rejecting a similar argument and noting that "[t]he proper service analysis under California state law is not premised on the parent-subsidiary relationship between two companies"). Finally, to the extent that Plaintiff argues that the Court should liberally construe § 416.10 to effectuate jurisdiction, the Court finds that Plaintiff has failed to satisfy her burden even under a liberal application of the statute. *See Thomas v. Takeda Pharms. USA, Inc.*, No. 1:16-cv-01566-LJO-EPG, 2017 WL 2214956, at *6 (E.D. Cal. May 19, 2017) (rejecting a similar argument).

Accordingly, the Court finds that Plaintiff has failed to meet her burden to show that her method of service for STNV was valid under Federal Rule of Civil Procedure 4, and the Court QUASHES service of process.

### ii.    Timeliness of Service

STNV also argues that Plaintiff's service was untimely. Federal Rule of Civil Procedure 4(m) requires a plaintiff to serve a defendant within 90 days. If a plaintiff fails to do so, the Court has discretion to "dismiss the action without prejudice against the defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m); *see also In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001). However, upon a showing of good cause, the Court must extend the time for service for an appropriate period. Fed. R. Civ. P. 4(m). "At a minimum, 'good cause' means excusable neglect. A plaintiff may also be required to show the following: (a) the party to be served personally received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed." *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991). Rule 4(m)'s 90-day service limit "does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1)."

There is no question that Plaintiff's service of STNV in the United States was untimely,

United States District Court
Northern District of California

notwithstanding the inadequacies in Plaintiff's method of service described above.  This case was removed on December 27, 2023, and Plaintiff's service of STNV did not occur until April 26, 2024.  *Compare* ECF No. 1, *with* ECF No. 38.  Plaintiff argues that she has shown good cause because her counsel understood that ST Inc.'s counsel would represent STNV based on an erroneous appearance on behalf of STNV in an application for admission of attorney *pro hac vice*.  Opp. to STNV at 20–22; ECF No. 57 ("Hale Decl.") ¶ 10.  Although the Court questions whether it was appropriate for Plaintiff's counsel to rely on an application for admission of attorney *pro hac vice* in light of ST Inc.'s counsel's refusal to accept service on behalf of STNV, the Court finds good cause for the delay under these circumstances.  STNV received actual notice of the lawsuit because it appeared, and STNV suffered no prejudice by a delay in service, especially because this case is still in its early stages and STNV was able to file a motion to dismiss which the Court now grants in substantial part.  Therefore, to the extent that Plaintiff seeks to serve STNV in the United States, the Court finds good cause for an extension of the deadline for Plaintiff to serve STNV.  If Plaintiff chooses to serve STNV in the Netherlands, this time limit will not apply.

*     *     *

Accordingly, the Court GRANTS STNV's motion to the extent that it requests that the Court QUASH service of process.  Because there is a reasonable prospect that service may yet be obtained, the Court DENIES STNV's motion to the extent that it requests dismissal for inadequate and untimely service of process.  *See Moletech Global Hong Kong*, 2009 WL 506873, at *3.

## C.    Statute of Limitations

ST Inc. and Bouvier[2] seek dismissal of all of Plaintiff's claims on the basis that they are time-barred under the applicable statute of limitations periods.  ST Inc. Mot. at 11–16.  Where it is apparent on the face of the complaint that the limitations period has run, the defendant may raise a

---

[2] The Court DENIES STNV's request to join in ST Inc.'s motion because the request for joinder is untimely.  It was filed well after the time in which Plaintiff was to file her opposition expired.  *See Florence v. Nangalama*, No. 2:11-CV-3119 GEB KJN, 2014 WL 3689362, at *1 (E.D. Cal. July 22, 2014) (denying a request for joinder as untimely because it was filed after the plaintiff was to file his opposition), *report and recommendation adopted*, No. 2:11-CV-3119 GEB KJN, 2014 WL 4098150 (E.D. Cal. Aug. 18, 2014).

1   statute of limitations defense in a Rule 12(b)(6) motion.  *Von Saher v. Norton Simon Museum of*

2   *Art*, 592 F.3d 954, 969 (9th Cir. 2010).  "This is true even though expiration of the limitations

3   period is an affirmative defense."  *Belete v. Oaks Corner*, No. 16-CV-04850-JCS, 2016 WL

4   6393510, at *4 (N.D. Cal. Oct. 28, 2016).  "[D]efendant has the burden of proving the action is

5   time-barred."  *Grisham v. Philip Morris, Inc.*, 670 F.Supp.2d 1014, 1020 (C.D. Cal. 2009)

6   (quoting *Gallardo v. DiCarlo*, 203 F.Supp.2d 1160, 1169 (C.D. Cal. 2002)).

7          It is undisputed that until recently, each of Plaintiff's claims would have been barred by the

8   relevant statutes of limitations.  Plaintiff alleges that all of the relevant events occurred between

9   January 2000 and 2003.  *See* Compl. ¶¶ 18, 29.  Plaintiff filed this lawsuit around twenty years

10  later, on December 21, 2023.  *See generally id.*  By the time this case was filed, all of the relevant

11  statutes of limitations had run.  In order to bring claims for FEHA violations in court, a plaintiff

12  must first exhaust administrative remedies.  *See* Cal. Gov't Code § 12960(c).  Plaintiff was

13  required to file her administrative complaint for discrimination, hostile work environment

14  harassment, retaliation, and failure to prevent discrimination, harassment, and retaliation with the

15  California Civil Rights Department ("CRD") within three years upon the date upon which the

16  unlawful practice occurred.  *See id.* at § 12960(e)(5).  Upon filing of an administrative complaint,

17  the CRD has 150 days to either bring a civil action or notify the complainant of the complainant's

18  right to request a right-to-sue notice.  *See id.* at § 12965(c)(1)(A).  If the complainant does not

19  request a right-to-sue notice, the notice is issued not more than one year after filing the complaint.

20  *Id.*  Plaintiff must file a lawsuit within one year of the date of any right-to-sue notice.  *Id.* at

21  § 12965(c)(1)(C).  Assuming that the latest date of the alleged wrongful conduct occurred on

22  December 31, 2003 and that each step of Plaintiff's administrative process occurred on the last

23  possible date, the statute of limitations for Plaintiff's FEHA claims ran on December 31, 2008.

24  Thus, Claims 1, 2, 3, and 4 would have been time-barred.

25          The statute of limitations analysis for Plaintiff's remaining claims is more straightforward.

26  Although there is no controlling authority and courts are split as to whether to apply a one-year or

27  three-year statute of limitations to claims for retaliation in violation of Cal. Labor Code § 1102.5,

28  under either limitations period, Plaintiff's Claim 5 would be time-barred.  *Compare Newton v.*

United States District Court
Northern District of California

*Bank of Am.*, No. CV 16-09581-AB (RAOx), 2018 WL 6219946, at *3–6 (C.D. Cal. Jan. 18, 2018) (summarizing case law and applying a three-year statute of limitations), *with Hector Tapia v. Hyatt Corp.*, No. SA CV 20-02346-DOC-(JDEx), 2021 WL 3076650, at *5 (C.D. Cal. June 30, 2021) (applying a one-year statute of limitations).  Claims 6 and 7 would be time-barred under the three-year statute of limitations for "an action upon a liability created by statute, other than a penalty or forfeiture."  Cal. Civ. Proc. Code § 338(a); *see also Rabara v. Heartland Emp. Servs., LLC*, No. 17-CV-03770-LHK, 2019 WL 1877351, at *23 (N.D. Cal. Apr. 26, 2019) (applying the three-year statute of limitations under § 338(a) to a claim under Cal. Labor Code § 98.6); *Jenkins v. BNSF Ry. Co.*, No. CV15-4567 PSG (EX), 2016 WL 11758742, at *4 (C.D. Cal. Mar. 11, 2016) (same for Cal. Labor Code § 6310).  Claims 8, 10, and 11 would be time-barred under the two-year statute of limitations for "[a]n action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another."  Cal. Civ. Proc. Code § 335.1; *see also Jenkins*, 2016 WL 11758742, at *7 (applying the two-year statute of limitations under § 335.1 to a claim for wrongful termination in violation of public policy); *Kaldis v. Wells Fargo Bank, N.A.*, 263 F.Supp.3d 856, 867 (C.D. Cal. 2017) (same for claims of negligence and intentional infliction of emotional distress).  Claim 9 would be time-barred by the ten-year statute of limitations for claims of sexual assault.  *See* Cal. Civ. Proc. Code § 340.16(a)(1).

Plaintiff argues that her claims are not time-barred because they fall under the revival provision of California Code of Civil Procedure § 340.16(e).  Opp. to ST Inc. at 11–12.  Section 340.16(e)(1) states that:

> Notwithstanding any other law, any claim seeking to recover damages suffered as a result of a sexual assault that occurred on or after the plaintiff's 18th birthday that would otherwise be barred before January 1, 2023, solely because the applicable statute of limitations has or had expired, is hereby revived, and a cause of action may proceed if already pending in court on January 1, 2023, or, if not filed by that date, may be commenced between January 1, 2023, and December 31, 2023.

Cal. Civ. Proc. Code § 340.16(e)(1).  In order for a claim to be revived under subsection (e), the plaintiff must allege all of the following:

> (A) The plaintiff was sexually assaulted.

(B) One or more entities are legally responsible for damages arising out of the sexual assault.

(C) The entity or entities, including, but not limited to, their officers, directors, representatives, employees, or agents, engaged in a cover up or attempted a cover up of a previous instance or allegations of sexual assault by an alleged perpetrator of such abuse.

*Id.* § 340.16(e)(2).  The statute defines a "cover up" as "a concerted effort to hide evidence relating to a sexual assault that incentivizes individuals to remain silent or prevents information relating to a sexual assault from becoming public or being disclosed to the plaintiff, including, but not limited to, the use of nondisclosure agreements or confidentiality agreements."  *Id.* § 340.16(e)(4)(A).

ST Inc. and Bouvier do not contest that Plaintiff has alleged that she was sexually assaulted and that one or more entities are legally responsible for damages arising out of the alleged sexual assault.  Instead, the crux of the parties' dispute is whether Plaintiff has adequately alleged the final requirement under § 340.16(e)(2).  Plaintiff argues that she has adequately met the third requirement under § 340.16(e)(2) through her allegations of Bouvier's first sexual assault of Plaintiff and that her factual allegations support an inference that "STM had a longstanding culture of enabling sexual assaults, protecting perpetrators of sexual assault, and retaliating against employees who reported sexual assaults."  Opp. to ST Inc. at 13–14.  ST Inc. and Bouvier argue that any actions by Daniels and ST Inc. to cover up Plaintiff's alleged sexual assaults occurred after both instances of alleged sexual assault, and Bouvier's actions cannot be considered a cover up because he acted alone.  ST Inc. Reply at 10–16.  Although ST Inc. and Bouvier also argued that Plaintiff's alleged first sexual assault cannot qualify as a previous instance or allegation of sexual assault, ST Inc. and Bouvier appear to have abandoned this argument.  *Compare* ST Inc. Mot. at 17 ("But, none of these allegations pertain to a *previous* instance or allegation of sexual assault.  Rather, they are about the very alleged sexual assaults that Plaintiff says form the basis for this lawsuit."), *with* ST Inc. Reply at 10 n.1 ("For purposes of the Motion and this Reply only, ST assumes that Plaintiff's alleged first sexual assault qualifies as a 'previous instance of a sexual assault.'").  Thus, the only question before the Court is whether Plaintiff has adequately alleged a

1    "cover up" of Bouvier's alleged first sexual assault of Plaintiff.[3]

2           To date, only three cases have addressed the cover up requirement of § 340.16(e)(2)(C),

3    and none is directly on point.  The first of these cases, *Jane Doe #21 v. CFR Enterprises*,

4    addressed the question of whether the alleged cover up must be of a previous instance or

5    allegations of sexual assault by the perpetrator of the abuse that is the basis for the revived claim.

6    *See Jane Doe #21 (S.H.) v. CFR Enterprises, Inc.*, 93 Cal.App.5th 1199, 1212 (2023).  The

7    California Court of Appeal held that "nothing in the language of the statute requires that the

8    alleged cover up involve a previous instance of sexual assault by the same individual who later

9    assaulted the plaintiff.  The statutory language requires only that the plaintiff allege a cover up of a

10   previous instance or allegations of sexual assault by '*an alleged perpetrator of such abuse*.'"  *Id.*

11   (quoting Cal. Civ. Proc. Code § 340.16(e)(2)(C)).  The California Court of Appeal did not address

12   the adequacy of the plaintiff's pleadings, and instead remanded for the trial court to do so in the

13   first instance.  *Id.*  In *Doe v. Neverson*, the second case to address § 340.16(e), the court held that

14   the plaintiff's claims of sexual battery and sexual assault, which were based on events occurring in

15   April 2013, were time barred because the plaintiff filed her lawsuit in June 2023.  *See Doe v.

16   Neverson*, No. 2:23-CV-04275-SVW-SK, 2023 WL 9375100, at *2 (C.D. Cal. Nov. 16, 2023).  In

17   so holding, the court found that the plaintiff failed to allege a cover up because she based her

18   claim on the fact that information about the defendant's past sexual assaults were public

19   knowledge and thus the plaintiff did not allege any facts that supported an inference that the

20   defendants engaged in a concerted effort to hide evidence.  *Id.* at *4.  Finally, in *Acevedo v. eXp

21   Realty, LLC*, the court found that the plaintiffs sufficiently alleged a cover up where the plaintiffs

22   alleged that two of the defendants "engaged in a cover up by means of 'repeated gaslighting, the

23   use of Non-Disclosure Agreements, and interference with the criminal investigation'"; another

24   defendant had a long history of sexual assaults; the company used nondisclosure agreements for

25   _____

26   [3] ST Inc. and Bouvier also argue that the Court should dismiss Plaintiff's claims because she failed to distinguish between ST Inc. and STM.  ST Inc. Reply at 17.  Because ST Inc. and Bouvier

27   raised this argument for the first time in a reply brief, it is forfeited.  *See Autotel v. Nevada Bell Tel. Co.*, 697 F.3d 846, 852 n.3 (9th Cir. 2012) ("[A]rguments raised for the first time in a reply

28   brief are waived." (alteration in original) (quoting *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 672 F.3d 1160, 1166 n.8 (9th Cir.2012))).

United States District Court
Northern District of California

1  incidents that predated the plaintiffs' assaults; and that the former president was accused of sexual

2  assault and women were "silenced" and terminated when they knew or complained about such

3  allegations.  *Acevedo v. eXp Realty, LLC*, No. 2:23-CV-01304-AB-AGR, 2024 WL 650189, at *30

4  (C.D. Cal. Jan. 29, 2024).

5         The Court finds that the allegations in Plaintiff's Complaint present a close question, but

6  the facts alleged in the Complaint fail to adequately allege a cover up.  Plaintiff points to the

7  following facts that she alleges allow the Court to infer that Defendants engaged in a cover up:

8  Bouvier's retaliation against Plaintiff after the alleged first sexual assault, ST Inc.'s purported

9  "longstanding culture," Daniels's dismissive reaction to her report after the alleged second sexual

10  assault, and the fact that she was terminated.  Opp. to ST Inc. at 13–14.  However, none of these

11  allegations alone or in combination are sufficient to allow the Court to draw a reasonable inference

12  that Defendants engaged in "a concerted effort to hide evidence relating to a sexual assault."  First,

13  the Court agrees with ST Inc. and Bouvier that Daniels's reaction to Plaintiff's report and

14  Plaintiff's termination cannot form the basis of a cover up under § 340.16(e)(2)(C).  The

15  California Court of Appeal in *Jane Doe #21* interpreted the cover up provision to require

16  allegations that "the relevant entity's 'cover up' . . . *predated* her alleged assault."  *See Jane Doe

17  #21*, 93 Cal.App.5th at 1211 (emphasis added); *see also id.* at 1211 n.15 ("The plaintiffs . . . do not

18  point us to any allegation of a cover up that clearly predated a plaintiff's alleged assault.").

19  Plaintiff alleges that she reported to Daniels and was terminated after her alleged second sexual

20  assault, so any cover up based on these facts do not satisfy the revival statute's requirements.

21  Second, Plaintiff argues that STM had a longstanding culture of enabling sexual assaults,

22  protecting perpetrators, and retaliating against employees who reported sexual assaults, but she

23  identifies no facts to support such an inference other than the facts related to her own alleged

24  sexual assaults.  The Court cannot draw a reasonable inference that ST Inc. had a longstanding

25  culture from allegations relating Plaintiff alone, especially where those allegations form the basis

26  of Plaintiff's claims.

27         Finally, the Court finds that Plaintiff's allegations regarding Bouvier's retaliation

28  following the alleged first sexual assault are inadequate to constitute a cover up because she failed

23

to allege facts to show that Bouvier's actions constituted a "concerted effort."  *See* Cal. Civ. Proc.

Code § 340.16(e)(4)(A).  The Court must first determine whether a "concerted effort" requires two

or more people.  "When a federal court interprets a California statute it applies California canons

of construction."  *Santa Clarita Valley Water Agency v. Whittaker Corp.*, 99 F.4th 458, 485 (9th

Cir. 2024).  "Under California law, the cardinal rule of statutory construction is to determine the

intent of the legislature."  *Id.* (quoting *In re Lieberman*, 245 F.3d 1090, 1092 (9th Cir. 2001)).  To

determine the intent of the legislature, the Court "first examine[s] the statutory language, giving it

a plain and commonsense meaning."  *People v. Reynoza*, 15 Cal.5th 982, 989 (2024).  "If the

language of the statute is not ambiguous, the plain meaning controls and resort to extrinsic sources

to determine the Legislature's intent is unnecessary."  *Santa Clarita Valley Water Agency*, 99

F.4th at 485 (quoting *Kavanaugh v. W. Sonoma Cnty. Union High Sch. Dist.*, 29 Cal.4th 911, 919

(2003)).  The Court finds that the plain meaning of "concerted effort" requires the efforts of two or

more people.  The plain meaning of "concerted" is "mutually contrived or agreed on" or

"performed in unison."  *Concerted*, Merriam-Webster.com, https://www.merriam-

webster.com/dictionary/concerted (last visited Aug. 2, 2024).  The plain meaning of "effort" is

"conscious exertion of power: hard work" or "a serious attempt."  *Effort*, Merriam-Webster.com,

https://www.merriam-webster.com/dictionary/effort (last visited Aug. 2, 2024).  To the extent that

"concerted" might refer to the seriousness of the attempt, rather than the number of individuals

required, the Court finds that such an interpretation is not reasonable because it would give

"concerted" and "effort" the same meaning and render at least one of the terms surplusage.  *See*

*People v. Cole*, 38 Cal.4th 964, 980–81 (2006) ("The rules of statutory construction direct us to

avoid, if possible, interpretations that render a part of a statute surplusage.").  Thus, in order to

give effect to the whole phrase, the Court finds that the plain meaning of the phrase "concerted

effort" requires conscious exertion by two or more people.  *Cf. Concerted Action*, Black's Law

Dictionary (12th ed. 2024) ("An action that has been planned, arranged, and agreed on *by parties*

*acting together* to further some scheme or cause." (emphasis added)).  Plaintiff's allegations fail to

meet this requirement because she has failed to allege that Bouvier's retaliatory efforts after the

first alleged sexual assault included the actions of any other individuals.

24

1        The Court further finds that Plaintiff's allegations regarding Bouvier's retaliation after the

2   first alleged sexual assault are deficient for another reason: Plaintiff fails to allege how Bouvier's

3   actions constituted an effort "to hide evidence relating to a sexual assault that incentivizes

4   individuals to remain silent." Cal. Civ. Proc. Code § 340.16(e)(4)(A).  Plaintiff states that after

5   the alleged first sexual assault, Bouvier treated Plaintiff as invisible, deprived her of access to

6   files, did not give her work, and told her that her coding skills were poor.  Compl. ¶ 25.  However,

7   Plaintiff has not alleged any facts that would allow the Court to reasonably infer that these

8   instances of retaliation were efforts to encourage Plaintiff to remain silent or to prevent

9   information related to the alleged first sexual assault from becoming public.  For example,

10  Plaintiff does not allege that she was subject to a nondisclosure or confidentiality agreement or

11  that these efforts would have a similar effect.  *Cf.* Cal. Civ. Proc. Code § 340.16(e)(2)(C) (noting

12  that examples of a concerted effort to hide evidence include nondisclosure and confidentiality

13  agreements); *Acevedo*, 2024 WL 650189, at *30 (describing allegations of nondisclosure

14  agreements referring to incidents that predated the plaintiffs' alleged assaults).

15       Accordingly, the Court GRANTS ST Inc.'s motion to dismiss Plaintiff's claims for failure

16  to allege the requirements of the revival statute.  The Court finds that Plaintiff may be able to

17  allege further facts to show a cover up that predated the alleged sexual assaults that form the basis

18  of her claims and GRANTS LEAVE TO AMEND.

19  **V.   ORDER**

20       For the foregoing reasons, IT IS HEREBY ORDERED that:

21       1.   Defendant STMicroelectronics, Inc.'s motion to dismiss (ECF No. 23) is

22  GRANTED.  Plaintiff's claims against ST Inc. and Bouvier are DISMISSED WITH LEAVE TO

23  AMEND.

24       2.   Defendant STMicroelectronics N.V.'s motion to dismiss (ECF No. 53) is

25  GRANTED IN PART and DENIED IN PART.  Plaintiff's claims against STNV are DISMISSED

26  WITH LEAVE TO AMEND for lack of personal jurisdiction.  The Court QUASHES service of

27  process with respect to STNV.  STNV's motion is DENIED to the extent that it requests dismissal

28  for inadequate or untimely service.

United States District Court
Northern District of California

3.      Plaintiff may file an amended complaint within 30 days of the date of this Order.  If Plaintiff files an amended complaint that names STNV as a defendant, she SHALL properly serve STNV within 30 days of filing the amended complaint if service is within the United States. Foreign service of the summons and complaint is not time limited under Rule 4.  Failure to timely and properly serve STNV and file proof of service will be grounds for dismissal.

4.      In the event that Defendants choose to file another motion to dismiss, all Defendants are limited to a total of 25 pages across all opening briefs, Plaintiff is limited to a total of 25 pages for all opposition briefs, and Defendants are limited to 15 pages for all reply briefs.


Dated:  August 2, 2024

_____
BETH LABSON FREEMAN
United States District Judge